# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 615 | **DATE** | 7/1/2003 |
| **CASE TITLE** | Newkirk vs. AAA Chicago Motor Club | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 8/13/03 at 11:00AM.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** The Court denies defendant's motion for summary judgment as to Counts I and II and grants the motion as to Counts III and IV. Nunc pro tunc 6/26/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 0 2 2003 | |
| | Notified counsel by telephone. | | date docketed | 40 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | JUL 0 2 2003 | |
| JD | courtroom deputy's initials | 03 JUL -1 PM 4:15 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE NEWKIRK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 01 C 0615 |
| | ) Judge George M. Marovich |
| AAA CHICAGO MOTOR CLUB, | ) |
| | ) |
| Defendant. | ) JUL 0 2 2003 |

MEMORANDUM OPINION AND ORDER

Plaintiff Joyce Newkirk ("Newkirk") filed a four-count Second Amended Complaint ("Complaint") against AAA Chicago Motor Club, ("CMC"), alleging racial discrimination in violation of the Civil Rights Act, as amended, 42 U.S.C. Section 2000(e) et seq. ("Title VII")(Count I); age discrimination in violation of the Age Discrimination Employment Act, 29 U.S.C. 621-634 ("ADEA")(Count II), disparate impact discrimination in violation of Title VII (Count III); and retaliation in violation of Title VII (Count IV). Defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion for Summary Judgment.

BACKGROUND

Newkirk is an African-American female, who is sixty-one years old. She began working at CMC in August 1982 as an Administrative Assistant. In 1992 or 1993, she was promoted to



Human Resources Specialist, a position that she held for the duration of her employment with CMC. During her employment, she received performance evaluations through which her supervisors would rate her performance in an array of different categories and they would give her an overall rating.

The undisputed facts show that when Julie Applegate ("Applegate") became Newkirk's supervisor in 1996, Newkirk started to receive much lower ratings than she had previously. Before 1996, she did not receive any competent minus ratings. However, from August 16, 1996 through August 16, 1999, Newkirk received twelve competent minus ratings, three marginal ratings and four unsatisfactory ratings (competent being average).

On June 6, 1995, CMC issued its Job Posting Program, which remained in effect through 2000. This program is a written program that has a category entitled "Minimum Qualifications". Under this category, the stated criteria for an employee to qualify is that the "[e]mployee must be in good standing and must have a minimum of a competent rating with no warnings on file." (Pl's Stmt. Of Mat. Facts, Ex. A, No. 4)

On May 15, 2000, Newkirk prepared an application for the position of Human Resource Manager based upon the job description that Applegate provided to her. Newkirk provides some evidence that this job description did not require two years of supervisory experience. However, on May 22, 2000, David Ziehm ("Ziehm"), Director of Human Resources at the time, posted the

official job posting through the *Job Posting Program*. This job description was updated to reflect an additional requirement of two years supervisory experience. Newkirk had one and half years of supervisory experience. Therefore, Newkirk was not allowed to interview for the position.

In addition to not having two years supervisory experience, Ziehm informed Newkirk that she was not allowed to interview for this position because she received competent minus ratings in at least one of the areas in which she was evaluated. The Job Posting Program policy did not specify whether the "minimum of a competent rating" necessary to qualify was the minimum necessary overall or the minimum necessary in each individual category. Newkirk had an overall competent score.

Additionally, at least two other employees--white female employees--were promoted to a higher position despite having competent minus ratings in some areas. CMC claims that occurred because they were promoted by a supervisor and in turn, by-passed the Job Posting Program.

Furthermore, in 1998, Kristen Crombie ("Crombie"), a 28-year old female with three years of human resources experience, received a salary of $2,917.00 per month as a Human Resource Specialist by CMC. While, Newkirk, a 61-years old female, with 18 years of human resource experience, received $2,900.00 per month as Human Resource Specialist by CMC.

Finally, in June 2000, CMC hired Eva Johnson ("Johnson"), a thirty-year-old white female. Johnson had less overall human experience than Newkirk, but had approximately three years human resources supervisory experience.

On August 18, 2000, Newkirk filed a claim with the Equal Employment Opportunity Commission ("EEOC"). On October 30, 2000, the EEOC dismissed Newkirk's Charge of Discrimination and sent her a right-to-sue letter. On January 30, 2001, Newkirk timely filed a complaint in this court which she subsequently amended twice. CMC received the Complaint around February 2, 2001. On this date, Newkirk was suspended and six months later, on August 3, 2001, she was fired. CMC filed this motion for summary judgment in response to Newkirk's Second Amended Complaint.

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish

the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Courtney v. Biosound, 42 F.3d 414, 418 (7th Cir. 1994).

II. Race and Age Discrimination Claims

Newkirk brings Count I alleging racial discrimination under Title VII and Count II alleging age discrimination under the ADEA. Since both Title VII and the ADEA discrimination claims are analyzed in the same manner, Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1162 (7th Cir. 1994), and since the evidence offered to support both of these claims is essentially the same, the Court will address them together.

There are two methods for demonstrating discrimination under both Title VII and the ADEA. Under the first method, a plaintiff may offer direct proof of discriminatory intent to meet his burden of proof. Von Zuckerstein v. Argonne Nat'l Lab, 984 F.2d 1467, 1472 (7th Cir. 1993). Alternatively, the indirect or burden-shifting method, originally described in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973), requires a plaintiff to initially establish a prima facie case of racial and age discrimination. Id. To establish a prima facie case of discriminatory treatment, Newkirk must show that: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) CMC treated similarly-situated employees more favorably.

See McDonnell Douglas, 411 U.S. at 802. Here, Newkirk solely attempts to prove discrimination through the indirect burden-shifting method. CMC concedes that Newkirk has met the first and third elements of the prima facie case; therefore, the Court need only consider whether Newkirk has raised an issue of fact as to the second and fourth prongs of the prima facie case.

First, the Court finds that Newkirk has raised an issue of fact as to the second prong, namely whether she performed her job satisfactorily. CMC points to evidence that Newkirk possessed a record of poor performance which prevented her from qualifying for the position. Newkirk admits that in her most recent job performance evaluations, she received numerous competent minus ratings in different categories and did make occasional mistakes. However, Newkirk indicates that Applegate, her supervisor, provided Newkirk with these performance appraisals and before Applegate, Newkirk did not have any evaluation problems. Also, Newkirk still received an overall "competent" rating from her last performance, which, according to CMC documentation, means "performance is consistently satisfactory". (Def.'s Motion for SJ, Ex. 1, Dep. Ex. 1). Therefore, because there are underlying factual disputes as to this issue, summary judgment is not proper at this time.

Newkirk has also raised an issue of fact as to the fourth prong, whether CMC treated similarly-situated employees more favorably. Initially, Newkirk provided evidence that a younger

employee in the same position was being paid $17 more a month than Newkirk despite Newkirk having many more years experience. CMC explained that Newkirk received less based upon her job performance and not her age. Because this issue directly relates to the factual disputes surrounding whether Newkirk did perform her job poorly, summary judgment is not proper at this time.

Additionally, Newkirk provided evidence that a position opened through CMC's Job Posting Program for a Human Resource Manager, but that she was not granted an interview. The position was instead given to a 32-year old white female who possessed less human resource experience than Newkirk. CMC contends that Newkirk was not qualified for this position for three reasons: 1) Newkirk possessed several "competent minus" review ratings, which deemed her ineligible to participate in CMC's Job Posting Program; 2) Newkirk did not possess the requisite years of supervisory experience announced for this position; and 3) Newkirk possessed a record of poor performance. All three of these reasons are fraught with factual disputes that cannot be resolved on summary judgment.

First, CMC points to evidence that Newkirk possessed several "competent minus" review ratings, which deemed her ineligible to participate in the Job Posting Program. However, under the "Minimum Qualifications" category of the Job Posting Program, the stated criteria for an employee to qualify is an "employee must be in good standing and must have a minimum of a competent rating

7

with no warnings on file." (Pl. Stmt. Of Material Facts, Ex. A, No. 4). Newkirk's last performance evaluation, in August of 1999, resulted in an overall rating of "competent", although admittedly she received a lesser rating in various underlying categories. CMC claims that despite the literal language under the Minimum Qualification category of their Job Posting Program, the company requires that an employee have a competent rating in <u>all</u> rating categories and not simply as an overall rating. Newkirk claims this reason is pretextual and supports this claim with evidence of two cases where white employees were promoted even though they had competent minus or lower in various areas of their performance evaluations. CMC attempts to explain these promotions as occurring because of in-house promotions, as opposed to, through the Job Posting Program. Again, Newkirk denies that these women were not promoted through the Job Posting Program. Therefore, since there are many underlying factual disputes surrounding this issue, summary judgment on this issue is not proper.

Second, CMC contends that Newkirk did not possess the requisite years of supervisory experience announced for the position as Human Resource Manager. Newkirk and CMC agree that the Job Posting for this position required a minimum of two years human resource supervisory experience. However, Newkirk presents evidence that the job description that Applegate originally provided to her and on which she relied upon in applying for the

8

position did not require any supervisory experience. Additionally, Newkirk believes that this was not the requirement in the past and the additional requirement of two years supervisory experience was added after her director found out that Newkirk was going to apply for the position. Newkirk had one and half years supervisory experience in human resources, along with more than twenty years human resources experience. CMC denies that it added this requirement after it found out that Newkirk was planning on applying for the position. Likewise, since there are many underlying factual disputes surrounding whether this issue, summary judgment on this issue is also improper.

Finally, as previously explained, there are factual disputes surrounding the issue of whether Newkirk did or did not perform her job poorly, which can not to be decided on a summary judgment motion.

Once a prima facie case is presented, a presumption of discrimination arises, and the burden shifts to CMC to come forward with evidence of a "legitimate, non-discriminatory reason" for not allowing Newkirk to interview for the Human Resource Manager position. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). As stated, CMC asserts that Newkirk was not allowed, and was not qualified, for the position of Human Resource Manager because: 1) Newkirk possessed several "competent minus" review ratings, which deemed her ineligible to participate

in CMC's Job Posting Program; 2) Newkirk did not possess the requisite years of supervisory experience announced for this position; and 3) Newkirk possessed a record of poor performance. These explanation serves as a sufficiently acceptable non-discriminatory reason for not allowing Newkirk to interview for said position.

Having set forth legitimate, non-discriminatory reasons for not allowing Newkirk to apply for the promotion, the burden again shifts back to Newkirk "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Wilson v. AM Gen. Corp., 167 F.3d 1114, 1119-20 (7th Cir.1999). "Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" Wolf v. Buss (America), Inc., 77 F.3d 914, 919 (7th Cir. 1996) (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995)). An employer's proffered reasons are pretextual if the employer's testimony contains such inconsistencies as to call into question the employer's overall veracity. See Castleman v. Acme Boot Co., 959 F.2d 1417, 1422 (7th Cir. 1992). Put another way, Newkirk may establish pretext by presenting evidence that CMC was more likely than not motivated by a discriminatory reason or that CMC's explanation is not worthy of credence, i.e., that the explanation was factually baseless, that it was not CMC's actual motivation or that it was

an insufficient rationale for CMC's action. See <u>Vakharia v. Swedish Covenant Hosp.</u>, 190 F.3d 799, 807 (7th Cir. 1999).

Newkirk has presented evidence, discussed earlier in regards to the prima facie case, to show that CMC's stated reasons were not the actual motivation, but rather mere pre-text for discrimination.

Therefore, this Court's ultimate inquiry at this juncture is whether the evidence discussed previously, viewed in a light most favorable to Newkirk, raises an inference that the real reason for CMC's dismissal was discriminatory. See <u>Jackson v. E.J. Brach Corp.</u>, 176 F.3d 971, 983 (7th Cir. 1999). In short, although there are certainly many benign and justifiable explanations for Newkirk being denied a chance to interview for the promotion, the Court finds that Newkirk has presented sufficient evidence calling into question the sincerity of CMC's asserted reasons, and that a factfinder could reasonably infer from the evidence that unlawful discrimination was the true motivation. See <u>Stalter v. Wal-Mart Stores, Inc.</u>, 195 F.3d 285, 289 (7th Cir. 1999). As such, CMC's motion for summary judgment is denied with respect to Newkirk's race and age discrimination claims.

Accordingly, the Court finds that there are genuine issues as to any material fact which preclude summary judgment. For all these reasons, summary judgment for Count I and II must be denied.

an insufficient rationale for CMC's action. See <u>Vakharia v. Swedish Covenant Hosp.</u>, 190 F.3d 799, 807 (7th Cir. 1999).

Newkirk has presented evidence, discussed earlier in regards to the prima facie case, to show that CMC's stated reasons were not the actual motivation, but rather mere pre-text for discrimination.

Therefore, this Court's ultimate inquiry at this juncture is whether the evidence discussed previously, viewed in a light most favorable to Newkirk, raises an inference that the real reason for CMC's dismissal was discriminatory. See <u>Jackson v. E.J. Brach Corp.</u>, 176 F.3d 971, 983 (7th Cir. 1999). In short, although there are certainly many benign and justifiable explanations for Newkirk being denied a chance to interview for the promotion, the Court finds that Newkirk has presented sufficient evidence calling into question the sincerity of CMC's asserted reasons, and that a factfinder could reasonably infer from the evidence that unlawful discrimination was the true motivation. See <u>Stalter v. Wal-Mart Stores, Inc.</u>, 195 F.3d 285, 289 (7th Cir. 1999). As such, CMC's motion for summary judgment is denied with respect to Newkirk's race and age discrimination claims.

Accordingly, the Court finds that there are genuine issues as to any material fact which preclude summary judgment. For all these reasons, summary judgment for Count I and II must be denied.

II. <u>Disparate Impact Discrimination Claim</u>

In Count III, Newkirk alleges that CMC's promotion policy results in a disparate impact on non-white people, who do not receive promotions to high ranks. CMC contends that this claim should fail because: 1) it was not raised in the EEOC complaint; and 2) it lacks the statistics necessary to properly plead a cause of action.

Generally, a Title VII plaintiff may bring only those claims that were included in his EEOC charge, <u>Cheek v. Western & Southern Live Ins. Co.</u>, 31 F.3d 497, 501 (7th Cir. 1994), or that are 'likely or reasonably related to the allegations of the charge and growing out of such allegations.'" <u>McKenzie v. Illinois Dept. Of Transp.</u>, 92 F.3d 473, 482 (7th Cir. 1996)(quoting <u>Jenkins v. Blue Cross Mut. Hosp. Ins.</u>, 538 F.2d 164, 167 (7th Cir. 1976)). Therefore, the Court must determine whether there is a relation between the allegations in the EEOC complaints and the disparate impact claim. "The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." <u>Id.</u> (quoting <u>Cheek</u>, 31 F.3d at 501). More specifically, Newkirk's EEOC claim is based on CMC's failure to promote her to the position of Human Resource Manager based upon her race and age discrimination. Therefore, the underlying individuals and conduct are the same.

Additionally, to make out a prima facie disparate impact case, Newkirk must establish that (1) CMC engaged in the complained of practices, and (2) statistics or other evidence demonstrate that the practices affected members of the protected group more harshly that other employees. Price v. City of Chicago, 251 F.3d 656, 659 (7th Cir. 2001). Although Newkirk offers statistics in her Complaint reflecting the underrepresentation of minorities in higher levels of management, Newkirk fails to provide statistics as to the pool of "qualified" applicants for these positions. "In disparate impact cases, it is eligibility rate, not underrepresentation, that is telling." Gilty v. Village of Oak Park, 919 F.2d 1247, 1254 (7th Cir. 1990). Moreover, Newkirk brings forth no evidence in her Response to CMC's Motion for Summary Judgment to refute CMC's assertion that Newkirk's disparate impact claim lacks the statistics or other evidence necessary to properly plead a cause of action. Therefore, summary judgment as to this count is granted.

IV. *Title VII Retaliation Claim*

Newkirk also alleges in Count IV that CMC refused to provide her with information to perform her job, suspended her for six months, and subsequently fired her as retaliation for filing a discrimination claim against CMC. To state a claim for retaliation, Newkirk must show that: 1) she engaged in statutorily protected activity; 2) she suffered an adverse

employment action; and 3) there is a causal link between the protected activity and adverse employment action. Jones v. Gen. Elec. Info. Servs., 3 F. Supp. 2d 910 (N.D. Ill. 1998).

First, Newkirk alleges that CMC refused to provide her with information needed to perform her job. Generally, an adverse employment action requires the loss of some actual or potential benefit such as through a demotion, termination, or loss of wages, benefits or material responsibilities. Crady v. Liberty Nat'l Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993). A mere failure to provide information without any loss of actual or potential benefit simply does not constitute an adverse employment action under the law.

Next, Newkirk highlights evidence that approximately one week after filing this discrimination claim, Newkirk was suspended with full pay and benefits and subsequently fired. In response, CMC provides evidence that Newkirk was suspended and fired because Newkirk copied and left the building with both her own, as well as other individual's confidential human resource documents, including private job performance evaluations, to attach to her Complaint in this case. Here, although Newkirk was engaged in statutorily protected activity of filing a discriminatory claim and although she did suffer an adverse employment action of being suspended then fired, based upon the facts presented, it is clear that Newkirk was aware that her actions both violated company policy and constituted theft.

14

Therefore, because she fails to establish a causal link between her filing a discrimination claim and her being suspended then fired, summary judgment is granted for CMC on this Count.

CONCLUSION

For the reasons set forth above, the Court denies Defendant's Motion for Summary Judgment as to Counts I and II and grants the motion as to Counts III and IV.

ENTER:

*George M. Marovich*
George M. Marovich
United States District Judge

DATED: June 26, 2003